METROPOLITAN WATER CO. v. KANSAS CITY et al.

(Circuit Court, D. Kansas, First Division.   July 4, 1908.)

No. 8,720.

1. STATUTES (§ 93*) — CONSTITUTIONALITY—SPECIAL LEGISLATION—MUNICIPAL CORPORATIONS.

Const. Kan. art. 12, § 1, provides that "the Legislature shall pass no special act conferring corporate powers." Article 2, § 17, provides that "all laws of a general nature shall have a uniform operation throughout the state, and in all cases where a general law can be made applicable no special law shall be enacted." Art. 12, § 5, provides that "provision shall be made by general law for the organization of cities, towns and villages." *Held* that, under the construction placed on such provisions by the Supreme Court of the state, Laws Kan. 1908, p. 30, c. 33, which authorizes cities of the first class having a population of over 50,000 to acquire waterworks property by condemnation and to maintain and operate the same, is not in violation of any of such provisions, although when enacted there was but one city in the state to which it applied, since, while it confers corporate powers, it is not special legislation within the state decisions; nor is it invalid because it does not provide the means to be employed in making payment of any increase in the compensation awarded for property condemned on appeal from the commissioners, it being expressly provided that such an appeal may be taken, and that the city shall be "liable" for the increased amount that may be recovered.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 101, 102; Dec. Dig. § 93.*]

2. REMOVAL OF CAUSES (§ 42*)—SUITS REMOVABLE—CONDEMNATION PROCEEDINGS.

A proceeding instituted by a city to condemn the property of a water company under Laws Kan. 1908, p. 30, c. 33, by an application to a state court for the appointment of commissioners to appraise the property as provided by such act, is a suit at law removable into a federal court where the requisite amount is involved and the defendant is a citizen of another state, and the timely filing of a proper petition and bond for such removal deprives the state court of jurisdiction to proceed further therein.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 42.*

Proceedings under power of eminent domain as civil suits under laws relating to removal of causes to federal courts, see South Dakota Cent. Ry. Co. v. Chicago, M. & St. P. Ry. Co., 73 C. C. A. 183.]

In Equity.   On motion for preliminary injunction.

Miller, Buchan & Miller, Samuel Maher, and Willard P. Hall, for Metropolitan Water Company.

H. L. Alden, City Counselor, for defendants.

POLLOCK, District Judge.   The bill presented in this case by complainant seeks a decretal order against defendants, restraining and enjoining them from proceeding further in an attempt made to condemn and take over the waterworks plant of complainant located and operated by it in the defendant city. The endeavor of the city to possess itself of this water plant of complainant is made under the provisions of chapter 33, p. 30, Laws (Special Session) 1908, of the Legislature of this state, entitled "An act relating to cities of the first class having a population of more than fifty thousand (inhabitants), and relating

to the acquisition and maintenance of waterworks by and the supplying of such cities and their inhabitants with water."

The facts in this matter necessary to a decision of the contentions made are as follows: For the past five years complainant has been operating its water plant in the defendant city without any franchise right from the city to so do, its franchise having expired by lapse of time, and the city having refused to grant such further extension of such franchise as was acceptable to complainant. In this condition of affairs complainant cannot extend its works commensurate with the growth and needs of the city and its inhabitants, and will not improve its plant. Therefore the inhabitants are made to suffer for want of an adequate supply of potable water for domestic use, and for want of sufficient protection from the dangers by fire, hence the city has resolved to take over the plant under the power of eminent domain conferred upon it by the above-mentioned act. To this end, proceeding under the provisions of the legislative act cited, defendant city on the 28th day of April, 1908, passed a resolution of the common council of the city declaring its intention to avail itself of the provisions of the act in the condemnation of certain property therein described, the same being the property which comprises the water plant of complainant in defendant city, and praying in said resolution the appointment by the honorable judge of the district court of the county of three commissioners, as provided in the act, to estimate and appraise the value of said property, and make and file an award of damages accruing to complainant from the taking by the city of said waterworks plant. Thereafter, and on the 6th day of May, 1908, upon presentation of said resolution to the judge of the district court of the state, there was appointed, as commissioners under the provisions of the act, defendants herein, Harry Darby, P. W. Goebel, and O. W. Sheperd, each and all citizens and taxpayers in defendant city and the county of Wyandotte, this state, in which said city is located. However, theretofore, and on the 4th day of May, complainant herein presented its petition and bond in due form to the honorable judge of the state court for removal of said controversy into this court. An order of removal by that court was refused complainant solely on the ground that the controversy presented was not such as is removable under the provisions of the federal judiciary act. Thereafter, complainant caused a transcript of the record to be lodged in this court and on June 24, 1908, the commissioners appointed by the state court being, as averred in the bill of complaint filed herein, about to make and file their award of damages, presented and filed its bill praying an order of this court restraining and enjoining the defendant city, and the commissioners therein named, from further proceeding in the matter. The grounds upon which this injunctive relief is demanded are these: (1) That the act under which defendants are proceeding is unconstitutional and void for two reasons: (a) Because it is special legislation; (b) because no provision is made in the act for making just compensation to complainant for its property. (2) It is also contended by complainant the present proceeding should be enjoined because the commissioners appointed are disqualified to act on account of interest in the controversy. (3) It is further contended the controversy was properly re-

moved into this court before the present commissioners were appointed, therefore the judge of the state court was without jurisdiction or power to make such appointment, and the commissioners are in consequence without authority to act in the premises and should be enjoined, although the act should be held valid legislation. And, further, that this court should grant the order here demanded in protection of its jurisdiction over the controversy acquired by such removal to this court. Of these contentions in their order.

As to the claimed unconstitutionality of the act, section 1 of article 12 of the Constitution provides as follows:

"The Legislature shall pass no special act conferring corporate powers."

Section 17 of article 2 provides:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted."

Section 5 of article 12 provides:

"Provision shall be made by general law for the organization of cities, towns and villages."

It must be conceded, I think, that the act in question confers corporate powers upon the defendant city. As said in Gilmore v. Norton, 10 Kan. 504:

"Any power conferred upon a corporation, and to be exercised by the corporation, is a corporate power."

Therefore, if the act in question be special legislation, its claimed invalidity must follow. Is it special legislation? The title of the act reads:

"An act relating to cities of the first class having a population of more than fifty thousand (inhabitants), and relating to the acquisition and maintenance of waterworks and the supplying of such cities and their inhabitants with water."

The purpose expressed by the title is fully carried out in the body of the act. The contention made by complainant is, as the cities of the state are created and classified by general laws, the act in question in limiting its operation to one of a class—that is, to a city of the first class having a population of over 50,000—without any reason for such limitation, and as the defendant city is the only city of the first class in the state having a population of more than 50,000 souls, and as the classification made is wholly arbitrary and without reason, therefore the act of necessity is special.

On the other hand, it is contended by defendants that the act is general in terms, and as it may relate to any city of the first class in the state when it shall attain a population of more than 50,000 souls, although there is no other city in the state having the requisite amount of population at this time, yet as it may operate upon any other city of the first class when such population is attained, the act is general and not special. While I am free to confess very cogent and powerful arguments may be adduced in support of the contention made by complainant that this act is special legislation and therefore void, yet the construction placed upon the provisions of the Constitution of the state

by its highest judicial tribunal must control here. From a careful consideration of some of the many cases emanating from that tribunal touching the question here presented, I am inclined to the opinion the claimed invalidity of the act is left in such doubt that I deem it my duty as a trial judge to uphold the act and allow it to be stricken down only by some appropriate reviewing tribunal after a more thorough and exhaustive research and consideration of the question presented than time will permit me to now give. A few of the cases from that court supporting or tending to support the validity of the classification made in the act are: State v. Downs, 60 Kan. 788, 57 Pac. 962; Parker-Washington Co. v. Kansas City, 73 Kan. 722, 85 Pac. 781; Wulf v. Kansas City (Kan.) 94 Pac. 207; Com'rs Wyandotte Co. v. Abbott, 52 Kan. 148, 34 Pac. 416; Riley v. Garfield Township, 58 Kan. 299, 49 Pac. 85.

Nor, in my judgment, is the act void because it does not provide the means to be employed in making payment or enforcing collection of any increase in the amount of the award made by the commissioners on appeal and trial before a jury, for the act in express terms creates a liability on the part of the city for such increased amount and costs of appeal in case the trial jury are of the opinion the award of the commissioners is not sufficient in amount to make just compensation to complainant. The act provides for an appeal, and employs the following language:

"Said city shall, in addition to the amount awarded by the commissioners, be liable for such sums in excess thereof as may be recovered on any appeal, and for the costs of said appeal, but if judgment for a less sum than awarded by the commissioners is recovered, the city shall not be liable for a sum in excess of such judgment nor for the costs of said appeal."

Hence, as the award of the jury on appeal fixing the just compensation to be made for the taking of the property as provided by the Constitution in the exercise of the power exerted is in form a judgment based on a liability created by statute, it is manifest the city could not retain the property and refuse payment of the judgment awarded. Or, if such attempt should be made on the part of the city, ample means are at hand to enforce the liability of the city as created in the act. Therefore I am constrained to hold the act in question valid legislation.

In the view of the matter I have taken, it becomes unnecessary at this time to pass upon the very important and extremely difficult question of the claimed disqualification of the commissioners appointed by the honorable judge of the state court, on account of their interest in the controversy. It is, however, not unworthy of notice that under repeated decisions of the Supreme Court of this state the commissioners herein appointed are not qualified jurors to sit in the trial of a case between the parties to this suit. The reason the decision of that question is not deemed important here is this: I think it must be held the appointment made was without jurisdiction or power in this case; in other words, that the controversy made between the parties is in its nature a special judicial proceeding, such as may be and was properly removable by complainant into this court before the appointment of

the commissioners was made. For the purpose of obtaining a clear understanding of the rights of the parties to this controversy, and the judicial questions involved, it may be well to inquire into the precise nature of the rights asserted by the defendant city under the provisions of the act of the Legislature in question, on the one hand, and the defenses urged by complainant against the assertion of such rights by the city, on the other.

The ultimate object to be attained by the city through this special proceeding is, by the exercise of the sovereign power of eminent domain, to take the property of complainant without its consent and against its will in the manner such power was conferred upon the city by the sovereign state through its legislative branch. In order to accomplish this purpose, it is necessary and prerequisite that the value of the property sought to be thus taken shall be first ascertained, and the act of making such ascertainment is in its essential and inherent nature a judicial act, regardless of the method adopted by the Legislature. For the legislative branch of the government would be powerless under the Constitution to provide any method of estimating the just compensation to be made complainant for its property, taken through the exercise of the power employed, which does not provide a judicial determination of that question. Mr. Justice Strong, delivering the opinion of the court in Kohl et al. v. United States, 91 U. S. 367, 23 L. Ed. 449, said:

"The right of eminent domain always was a right at common law. It was not a right in equity, nor was it even the creature of a statute. The time of its exercise may have been prescribed by statute, but the right itself was superior to any statute. That it was not enforced through the agency of a jury is immaterial, for many civil as well as criminal proceedings at common law were without a jury. It is difficult, then, to see why a proceeding to take land in virtue of the government's eminent domain, and determining the compensation to be made for it, is not, within the meaning of the statute, a suit at common law, when initiated in a court. It is an attempt to enforce a legal right. It is quite immaterial that Congress has not enacted that the compensation shall be ascertained in a judicial proceeding. That ascertainment is in its nature at least quasi judicial. Certainly no other mode than a judicial trial has been provided."

Again, complainant denies the validity of the act under which the city attempts to exercise the power of taking its property, hence it has the right to controvert and litigate with the city its power to proceed under the act in question at all. And, being a citizen of a state other than this, and the property sought to be taken being of large value, it has the right to appeal to this court for a determination of not a part only, but all, of the issues involved in such controversy. For it is not only apparent in reason, but the settled law of this state, if complainant should have acquiesced in the exercise of the power claimed by the city, through the commissioners appointed, until an award should have been made and filed by them and the duties of the commission at an end, and then have appealed from the award made, it would have estopped itself by such appeal from questioning the right of the city to proceed or the qualifications of the commissioners thus appointed, and limited the scope of the inquiry to the amount of award to be made as the just compensation for the property taken. In Rail-

way Co. v. Railway Co., 67 Kan. 569, 70 Pac. 939, 73 Pac. 899, it is said:

"Under the statutes the condemning company has the absolute and uncontrolled direction of the condemnation proceeding. The commissioners lay off the route for such distance as the company desires, of such width as the company desires, within the limits of one hundred feet, and upon such location as the company desires. If the company desires the land of another railroad company, the coveted quantity is surveyed and appraised, and a report of the proceeding made and filed. Upon making a deposit of damages and completing the county records, the company has the right to occupy the land, and by building the road may acquire its perpetual use. Against this proceeding the statute has given the landowner no remedy except by appeal, and by strict phraseology has limited the question to be tried upon appeal to the matter of damages alone. * * *

"If, therefore, the landowner either accepts the condemnation money or takes an appeal, the perpetual use of the land vests in the condemning company when compensation is made. And if an appeal be taken, no jurisdiction can vest in the appellate court to try the rightfulness of the appropriation of a part of any specific tract, or to eliminate from the condemnation proceeding a part of a tract wrongfully taken, or upon such elimination to apportion gross awards of damages for land taken and for injury to land not taken. * * *

"Under these circumstances the only adequate remedy available to the landowner is an injunction from a court of equity."

Hence complainant, in recognition of accepted principles of the law, upon the institution of this special proceeding by defendant city against it to take over its property through the exercise of judicial powers, in the first instance applied for a removal of the entire controversy, involving not only the compensation to be made, but the right to take the property at all into this court, to the end that all judicial questions might be here presented and determined; and, in the exercise of its right of removal and the perfection of such transfer of jurisdiction, caused to be prepared and filed herein such transcript of the record as the exigencies of the case permitted, and such removal case is now pending in this court undetermined. Such right of removal in my judgment was timely exercised in a proper manner, and operated to deprive the state judge of all jurisdiction to act in the premises, and to confer jurisdiction of the entire controversy upon this court, as reference to a few of the adjudicated cases will show.

In Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206, Mr. Justice Field, delivering the opinion of the court, said:

"But notwithstanding the right is one that appertains to sovereignty when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a proper matter for judicial cognizance. If that inquiry take the form of a proceeding before the courts between parties—the owners of the land on the one side, and the company seeking the appropriation on the other—there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the state."

In Searl v. School District No. 2, 124 U. S. 199, 8 Sup. Ct. 461 (31 L. Ed. 415), a condemnation case arising under the statutes of Colorado, Mr. Justice Matthews, delivering the opinion of the court, said:

"The fact that the Colorado statute provides for the ascertainment of damages by a commission of three freeholders, unless at the hearing a defendant shall demand a jury, does not make the proceeding from its commence-

ment any the less a suit at law within the meaning of the Constitution and acts of Congress and the previous decisions of this court. * * * It is an adversary judicial proceeding from the beginning. The appointment of commissioners to ascertain the compensation is only one of the modes by which it is to be determined. The proceeding is, therefore, a suit at law from the time of the filing of the petition and the service of process upon the defendant."

In Traction Company v. Mining Company, 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, Mr. Justice Harlan, delivering the opinion of the court, quotes with approval the language employed by Mr. Justice Brewer in Colorado Midland Railway Co. v. Jones (C. C.) 29 Fed. 193, as follows:

"I do not suppose that a state can, by making special provisions for the trial of any particular controversy, prevent the exercise of the right of removal. If there was no statutory limitation, the Legislature could provide for the trial of many cases by less than a common-law jury, or in some other special way. But the fact that it had made such different and special provisions would not make the proceedings any the less a trial, or such a suit as, if between citizens of two states, could not be removed to the federal courts. If this were possible, then the only thing the Legislature of a state would have to do to destroy the right of removal entirely would be to simply change and modify the details of procedure."

In Smith v. Adams, 130 U. S. 167, 9 Sup. Ct. 566, 32 L. Ed. 895, Mr. Justice Field, delivering the opinion of the court, in referring to the clauses of the Constitution and the statutes relating to the judicial power and the courts of the United States, said:

"By those terms are intended the claims or contentions of litigants brought before the courts for adjudication by regular proceedings established for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim or contention of a party takes such a form that the judicial power is capable of acting upon it, then it has become a case or controversy."

The case of Traction Company v. Mining Company, supra, was identical in principle with the case at bar. Mr. Justice Harlan, delivering the opinion of the court, commencing at page 245 of 196 U. S., page 253 of 25 Sup. Ct. (49 L. Ed. 462), said:

"The rule is now settled that, under the judiciary act of 1887–1888, a suit cannot be removed from a state court unless it could have been brought originally in the Circuit Court of the United States. Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Mexican Nat. R. R. v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672; Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173, 32 L. Ed. 543; Minnesota v. Northern Securities Co., 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870.

"Why could not the proceeding instituted in the county court have been brought originally in the federal court? The case, as made in the county court, was, beyond question, a judicial proceeding; it related to property rights, the parties are corporate citizens of different states, and the value of the matter in dispute exceeded the amount requisite to give jurisdiction to the Circuit Court. It was therefore a proceeding embraced by the very words of the Constitution of the United States, which declares that the 'judicial power shall extend * * * to controversies * * * between citizens of different states,' as well as by act of 1887 (Act March 3, 1887, c. 373, 24 Stat. 552 [U. S. Comp. St. 1901, p. 508]), which declares 'that the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, * * * in which there shall be

METROPOLITAN WATER CO. V. KANSAS CITY.

a controversy between citizens of different states.' In view of these explicit provisions, it is clear that the proceeding in the county court was a suit or controversy within the meaning both of the Constitution and of the judiciary act. We could not hold otherwise without overruling former decisions of this court."

In Mason City R. R. Co. v. Boynton, 204 U. S. 576, 27 Sup. Ct. 321, 51 L. Ed. 629, a condemnation case arising under the statutes of Iowa, Mr. Justice Holmes, delivering the opinion of the court, said:

"In condemnation proceedings the words 'plaintiff' and 'defendant' can be used only in an uncommon and liberal sense. The plaintiff complains of nothing. The defendant denies no past or threatened wrong. Both parties are actors: one to acquire title, the other to get as large pay as he can. It is not necessary, in order to decide that the present removal was right, to say that the state decision was wrong; we leave the latter question where we find it. But we are of opinion that the removal in this case was right for reasons which it will not take long to state."

In the light of the foregoing cases and many other decisions from the Supreme Court, I am clearly of the opinion that the condemnation proceeding involved in this suit is of such nature, involves such amount, and is such a controversy between a citizen of this state and a citizen of a foreign state that it was from the time of the institution of the proceeding, by the passage and presentation of the resolution of the common council to the judge of the state court, such a proceeding as is properly removable into this court, and was by the proceedings taken by complainant rightfully removed into this court.

From this it necessarily follows that the judge of the state court was without jurisdiction to make the appointment of the commissioners made in this case, and that this court in the protection of its jurisdiction will stay further proceedings on the part of such commissioners acting without authority. It follows, the temporary injunction applied for must issue. It is so ordered.

It is further ordered that unless the parties to this suit shall, within 20 days from this date, file a stipulation fixing the price at which the plant may be taken over by the city (if the electors by their vote shall so authorize); or in the event that solicitors for the respective parties to this litigation shall fail for 20 days to agree upon a commission to make an award herein, in such case commissioners will be named by this court to make an estimate and appraisement of the value of the property and the amount of the award which shall be paid by the city to complainant for the works. And in the event an award is made by such commission, and such award shall prove unsatisfactory to complainant herein, on demand it shall have a jury to estimate the value of the plant, and award compensation therefor to complainant. And in such event, if the same is ratified by a vote of the electors of the city, the purchase will be thus complete. If not ratified, the matter will stand in its present condition. All further proceedings herein will be taken in the case removed into this court, No. 8,715, on the law docket of this court. 164 Fed. 728.